**CINCINNATI BELL TELEPHONE COMPANY, Plaintiff,**

v.

**ALLNET COMMUNICATION SERVICES, INC., Defendant.**

No. C–1–91–903.

United States District Court, S.D. Ohio, W.D.

April 20, 1992.

Order Denying Motion for Reconsideration Sept. 24, 1992.

Douglas Edward Hart, Frost & Jacobs, Cincinnati, OH, for plaintiff.

Judith Brick Sanders, Bell & Bentine Company L.P.A., Columbus, OH, for defendant.

ORDER DENYING DEFENDANT'S MOTION TO TRANSFER OR ABATE, AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BUT GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on a number of motions: the Defendant Allnet

Communication Services, Inc.'s ("Allnet") motion to change venue or, in the alternative, to abate until the Federal Communications Commission ("FCC") has resolved Allnet's complaint (doc. 5), the Plaintiff Cincinnati Bell Telephone Company's ("Cincinnati Bell") response in opposition to the Defendant's motion (doc. 6), the Plaintiff's motion for default judgment or, in the alternative, for summary judgment (doc. 7), the Defendant's reply (doc. 8), the Defendant's summary of reply (doc. 9), and the Plaintiff's reply (doc. 10).

The issues before this Court are whether this case should be transferred or abated, and if not, whether the Plaintiff should be granted a default judgment or summary judgment.

## BACKGROUND

Cincinnati Bell is the local phone company for the city of Cincinnati. Allnet is a telecommunications company which provides long distance service. In one area of its business, Allnet sells long distance services to customers located in Cincinnati Bell's local service area. Consequently, Allnet must obtain access to the local telephone network. Cincinnati Bell is the only telephone company which can provide Allnet access to the local customers in the Cincinnati Bell service area. For this access, Allnet pays Cincinnati Bell on a monthly basis. The FCC has established a regulatory scheme for calculating the maximum rates local telephone companies, like Cincinnati Bell, may charge for access to the local telephone network. *See* 47 C.F.R. 65.700 to 65.703 (1992) (determining the maximum allowable rate of return).

Cincinnati Bell claims that Allnet has not paid for its access to the Cincinnati telephone network. Cincinnati Bell states that it is owed $185,000. In addition, Cincinnati Bell seeks late charges of $48,446.36, which are accruing daily. Cincinnati Bell further asserts that the amount that Allnet owes is based upon rates which are published with the FCC and the appropriate State of Ohio regulatory agencies.

Allnet, in opposition, claims that Cincinnati Bell's rates were unreasonable. Spe-cifically, during the 1987–1988 period, the FCC determined that 12% would be a reasonable rate of return for Cincinnati Bell's access charges, with certain ceilings set slightly higher. Allnet contends that Cincinnati Bell exceeded the prescribed rates of return in the 1987–1988 period. As a result, in 1990, Allnet reduced its payments to Cincinnati Bell by $185,000, which Allnet argues is a portion of the excessive and unreasonable fees charged by Cincinnati Bell.

Cincinnati Bell commenced this case in the Hamilton County Common Pleas Court, and Allnet removed the matter to this Court. Allnet has now moved for change of venue, claiming that this case should be transferred to the Federal District Court in Washington, D.C., or, in the alternative, that the action should be stayed until the FCC has resolved Allnet's complaint about Cincinnati Bell's access charges during 1987–1988.

## DISCUSSION

### *Motion to Transfer*

Congress has provided that "[f]or the convenience of the parties and witnesses, and the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." 28 U.S.C. § 1404(a) (1991).

The party requesting a transfer bears the burden to prove why a court should grant a transfer. *USA ex rel. David A. Grand v. Northrop Corp.*, 811 F.Supp. 330, 332 (S.D.Ohio 1992) (J. Spiegel) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). In considering a motion to transfer, a court should balance such factors as: (1) the private interests of the litigants; (2) the convenience to the witnesses; (3) the location of the operative facts; (4) the location of the documentary evidence; (5) the possibility of prejudice in either the forum or transfer state; and, (6) the public's interest. *Grand*, 811 F.Supp. at 332 (citing *Cincinnati Milacron Indus. v. Aqua*

*Dyne, Inc.*, 592 F.Supp. 1113 (S.D.Ohio 1984)).

■ Allnet asks that this case be transferred to federal district court in Washington, D.C. In considering the appropriate factors on a motion to transfer, we first note that "... unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

Turning our attention to the balance of factors, we find that transfer is not warranted in this case. Cincinnati Bell primarily provided service in Ohio, with some service provided in Kentucky and Indiana. None of Cincinnati Bell's services had any relation to Washington, D.C. The headquarters of Cincinnati Bell is in Cincinnati, Ohio. Allnet is headquartered in Michigan, but it has a permanent office in the Cincinnati area. Furthermore, many of the witnesses and documents pertinent to this suit are located in Cincinnati. This case simply does not have sufficient contacts with Washington, D.C. to merit a transfer.

Accordingly, Allnet's motion to transfer is denied.

### Motion to Stay

In the alternative to a change of venue, Allnet requests that this Court stay this action pending the outcome before the FCC of the case *Allnet Communication Serv., Inc. v. Cincinnati Bell Tel. Co.*, File No. E-92-21 (filed Sept. 27, 1991).

The action before the FCC involves the propriety of Cincinnati Bell's access charges in 1987–1988. The action before this Court was brought because Allnet refused to pay its bills for services rendered by Cincinnati Bell in 1990. The 1990 services were under different rate ceilings than those in 1987–1988.

■ Congress has provided that a person claiming to have been damaged by a communication carrier may either challenge the actions of the communication carrier before the FCC or file suit in federal district court, but not both. 47 U.S.C. § 207 (1991). Thus, having elected to litigate its 1987–1988 claims before the FCC, Allnet may not litigate those same claims here. Instead, the only issue before this Court is whether Allnet owes Cincinnati Bell for services rendered by Cincinnati Bell in 1990. The FCC can determine in a separate action whether Cincinnati Bell must give Allnet a refund for allegedly excessive access charges in 1987–1988.[1]

To hold otherwise would encourage customers to set-off when access charges are in dispute. Such a holding would violate the Supreme Court's policy that "... where there is a dispute about the appropriate rate, the equities favor allowing the carrier's rate to control pending decision by the Commission...." *Burlington Northern, Inc. v. United States*, 459 U.S. 131, 141–42, 103 S.Ct. 514, 521, 74 L.Ed.2d 311 (1982). Thus, we hold that Allnet cannot challenge the 1987–1988 rate by withholding part of its payment for the 1990 bill. Allnet may continue its challenge to Cincinnati Bell's 1987–1988 access charges before the FCC, and Cincinnati Bell may continue in its action to try to recover the amount due from Allnet for services provided in 1990.

Accordingly, the Defendant's motion to stay is denied.

### Motion for Default Judgment

The Plaintiff, Cincinnati Bell, has moved for a default judgment against Allnet.

■ The Federal Rules of Civil Procedure provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules ... the clerk shall enter the party's default." Fed. R.Civ.P. 55(a). Any doubts as to the propriety of granting a default judgment should be resolved in favor of the non-moving party. *See* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 10 *Federal Practice and Procedure* §§ 2681–2701 (2nd ed. 1983).

---

1. Indeed, Allnet itself admitted that "[i]t is common practice for the FCC to order refunds where the rates charged are shown to be producing excessive returns." Defendant's Reply, Doc. 8, at 4.

In the matter before this Court, Allnet has defended itself in this suit. Allnet removed this matter to federal court. Furthermore, Allnet has vigorously defended its position in this litigation, by arguing that this case should be transferred or stayed. Therefore, although Allnet has not filed an answer, we conclude that a default judgment is inappropriate because Allnet has "... otherwise defend[ed] ..." itself under the rules. *See id.*

### Motion for Summary Judgment

The Plaintiff, Cincinnati Bell, has also moved for summary judgment. We must first consider the standard of review. The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

In the matter before the Court, there are no genuine disputes as to the material facts. Cincinnati Bell provided to Allnet access to the Cincinnati telephone network. In return, Cincinnati Bell invoiced Allnet on a monthly basis. Allnet routinely paid Cincinnati Bell for access. However, in 1990, Allnet withheld $185,000 from the amount owed to Cincinnati Bell. All of the amounts due pertained to service provided in 1990.

Allnet has never raised factual questions as to what has transpired. Instead, Allnet raised a legal question as to whether it could refuse to pay part of its 1990 bill because of a dispute Allnet has with Cincinnati Bell arising out of the 1987–1988 bills. In this Order, this Court has disallowed such practices by Allnet.

Accordingly, the Cincinnati Bell's motion for summary judgment is granted.

### CONCLUSION

This Court has carefully considered the issues before it. We have determined that this matter should not be transferred or stayed. Furthermore, while a default judgment is not in order, the Plaintiff's motion for summary judgment is granted because

there are no genuine disputes as to the material facts.

SO ORDERED.

## ORDER DENYING MOTION FOR RECONSIDERATION

This matter is before the Court on the following items: the Plaintiff's Motion to Amend Judgment (doc. 13), the Defendant's Motion to Alter Judgment (doc. 14), the Defendant's Response (doc. 15), the Plaintiff's Response (doc. 16), the Plaintiff's Reply (doc. 18), the Defendant's Reply (doc. 17).

In an earlier Order, this Court granted the Plaintiff's Motion for Summary Judgment. Doc. 11. The issue before the Court in determining that Order was whether a user of regulated utility services may refuse to pay tariff charges for those utility services, or whether the user must pay the filed rates and seek a refund afterward. The Court held that Defendant Allnet was liable for refusing to pay part of its 1990 bill. The Court did not determine an amount that the Plaintiff was owed, because the Court was not given enough information to make that decision.

■ Allnet, the Defendant, asks this Court to reexamine that decision. This Court has carefully reconsidered its decision in light of Allnet's more detailed arguments, as set forth in its Motion for Reconsideration. Upon further review, however, we are convinced that Allnet is obligated to pay the amount in dispute.

This matter essentially concerns the collection of a late bill. Allnet did not pay access charges for access to the Cincinnati telephone network. These access charges were published rates. This is not a case where Allnet was charged for services that it did not use. Similarly, this is not a case where Allnet claims it was charged rates differing from the published rates.

The essence of Allnet's argument is that Cincinnati Bell's published rates were unreasonable. Allnet is currently challenging the reasonableness of Cincinnati Bell's rates in an action before the FCC. *See Allnet Communication Serv., Inc. v. Cin-*

*cinnati Bell Tel. Co.,* File No. E–92–21 (filed Sept. 27, 1991).

■ The courts have not been uniform in dealing with the issue of whether a customer must pay the challenged rates first, and then demand reparation, or whether a customer may withhold payment upon challenging the reasonableness of the published rates. The United States Supreme Court has considered a similar case to the one now before the Court. In *Burlington N., Inc. v. United States,* 459 U.S. 131, 103 S.Ct. 514, 74 L.Ed.2d 311 (1982), the Supreme Court considered a case involving the rate charges to move coal by the railroad. The Supreme Court concluded that Interstate Commerce Commission ("ICC") should determine the reasonableness of the rates, and that the federal courts should not involve themselves in such issues. *Id.*

Nevertheless, the Circuit Courts of Appeal appear to be divided on the issue of whether the alleged unreasonableness of filed rates can constitute a defense in federal court. *Cf., S. Pac. Trans. Co. v. San Antonio, Tex.,* 748 F.2d 266 (5th Cir.1984) (federal courts should not consider the reasonableness of the filed rates); *with Atlantis Express v. Standard Transp. Servs.,* 955 F.2d 529 (8th Cir.1992) (the issue of a rate's reasonableness may be considered by the courts). The Defendant points to a decision by our parent court. In *Rebel Motor Freight, Inc. v. Interstate Commerce Commission,* 933 F.2d 1009 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 617, 116 L.Ed.2d 638 (1991), the Sixth Circuit considered an appeal from the ICC over the interstate transportation of dog food. The *Rebel* court remanded the case back to the ICC to determine the reasonableness of the carrier's rates. The decision in *Rebel* is not applicable to the case now before the Court. Here, the Defendant Allnet has already challenged the reasonableness of Cincinnati Bell's rates before the FCC. Defendant Allnet desires in the lawsuit before this Court to challenge the reasonableness of Cincinnati Bell's rates on a second front. We conclude that allowing Allnet to proceed with dual lawsuits is not only a waste of judicial re-

sources, but also poses the risk of inconsistent adjudications.

Other policy considerations also dictate that this Court should not consider the reasonableness of Cincinnati Bell's rates. The FCC has knowledge and expertise in determining the reasonableness of Cincinnati Bell's rates. The Sixth Circuit recognized the concept of agency expertise when it remanded the *Rebel* case to the ICC to determine the reasonableness of the rate in question. Moreover, enforcement of the filed rate ensures that the regulated entities charge only those rates that the agency has approved of or are aware. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).

Therefore, upon further consideration we hold that our earlier decision granting the Plaintiff's Motion for Summary Judgment was correct. Hence, we must now consider the Plaintiff's damages. Allnet did not pay $185,000.00 in local access charges to Cincinnati Bell. In line with this Court's decision, the Plaintiff is entitled to this money.

■ Plaintiff Cincinnati Bell also requests $61,854.23 in late charges. Cincinnati Bell's late payment charge equals approximately 18% per year. We believe that a late payment charge of 18% per year is unreasonable. *See generally, Madison Gas*, 1990 Wisc. PUC LEXIS 20, at *29 (Wisc. PSC June 15, 1990) (finding a 12% interest rate to be appropriate, as opposed to the 18% requested). The current rate of statutory interest is 4.11%, although this percentage has been dropping over the last year with the general decline in interest rates. Therefore, we find that a 6% interest rate would be fair to both parties and would more accurately reflect today's supply and demand for money. As a result, Cincinnati Bell is entitled to a late payment fee totalling 6% per year simple interest on the late payment of $185,000.

Accordingly, the Plaintiff Cincinnati Bell is awarded $185,000, plus a late payment fee of 6% per year simple interest on the late payment of $185,000, beginning when

Allnet's debt to Cincinnati Bell became past due.

SO ORDERED.